**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
ROANOKE DIVISION**

| | | |
|---|---|---|
| **MICHAEL ANDRE BROWN,** | ) | **CASE NO. 7:19CV00566** |
| | ) | |
| **Petitioner,** | ) | |
| **v.** | ) | **MEMORANDUM OPINION** |
| | ) | |
| **HAROLD W. CLARKE,** | ) | **By: Hon. Glen E. Conrad** |
| | ) | **Senior United States District Judge** |
| **Respondent.** | ) | |

Petitioner Michael Andre Brown, a prisoner proceeding pro se, filed a petition for a writ of

habeas corpus, pursuant to 28 U.S.C. § 2254.  He challenges the validity of his confinement under

a 2015 judgment from the Rockingham County Circuit Court, convicting him of distribution of

heroin and possession with intent to distribute heroin, both in violation of Virginia Code § 18.2-

248.  The matter is presently before the court on the respondent's motions to dismiss and Brown's

responses thereto.  For the reasons set forth below, the court concludes that the respondent's

motions must be granted.

I.  BACKGROUND

A.  Procedural History

On July 11, 2014, law enforcement officers arrested Brown after he made a controlled drug

sale to a confidential informant and left the scene.  He was charged with four offenses: possession

of ecstasy without a valid prescription, possession of crack cocaine with intent to distribute (third

offense), possession of heroin with intent to distribute (third offense), and distribution of a

controlled substance (third offense).  On December 2, 2014, the Commonwealth amended one of

the warrants, reducing possession of cocaine with intent to distribute to simple possession of

cocaine.  Following that amendment, Brown waived his preliminary hearing in General District

Court on all four charges.  The grand jury then indicted Brown on December 15, 2014, for possession of 3,4-methylenedioxyethcathinone (ecstasy), possession of cocaine, and two counts of violating Virginia Code § 18.2-248, third offense.  Those last two indictments had identical wording, tracking the language of § 18.2-248, and charged that on July 11, 2014, Brown did "unlawfully and feloniously manufacture, sell, give, or distribute or possess with the intent to manufacture, sell, give or distribute a schedule I controlled substance," namely heroin.

Brown filed a "motion to consolidate the duplicative indictments/double jeopardy," challenging the two charges for a single crime of possession with intent to distribute heroin.  On March 13, 2015, the Circuit Court denied the motion, finding that one indictment covered the actual distribution to the informant, whereas the other indictment covered his possession of twenty baggies of heroin on his person, with intent to distribute, when he was detained after the controlled buy had ended.  (Hr'g Tr. at 3–4, March 13, 2015.)  Subsequently, the two heroin charges were set for trial on June 26, 2015, and the other two charges were set for July 23, 2015.  (Hr'g Tr. at 5, April 16, 2015.)  On May 18, 2015, a grand jury direct indicted Brown for possession of cocaine with intent to distribute on July 11, 2014.  At Brown's request, that charge was included for trial on June 26, 2015, with the heroin cases.  (Hr'g Tr. at 3, May 26, 2015.)

Following presentation of the evidence to the jury on June 26, 2015, but before jury instructions and closing arguments, Brown decided to plead guilty to one of the heroin indictments, admitting that he sold heroin to the informant on July 11, 2014.  After instructions on the remaining charges, the jury deliberated and convicted Brown of possessing heroin with the intent to distribute, but the jury found him "not guilty" of possession with intent to distribute cocaine.  The jury recommended a sentence of twenty years in prison.  The Court ordered a presentence report and scheduled the matter for a sentencing hearing.

Two weeks after the jury trial, the confidential informant was indicted for distribution of methamphetamine in Shenandoah County on July 9 and July 12, 2014, very close in time to her purchase of heroin from Brown.  The Commonwealth had not provided information about those pending charges to defense counsel before trial, although the government had provided information about charges pending against the informant for drug dealing in September 2014.  Learning of this new impeachment information, which the government should have disclosed pre-trial under Brady v. Maryland, 373 U.S. 83 (1963), Brown moved the Court to vacate his conviction, allow withdrawal of his guilty plea, and grant a new trial on those charges.  The Court denied the motion.  (Hr'g Tr. at 23–24, October 29, 2015.)  Subsequently, the Court sentenced Brown to ten years (the mandatory minimum) on the charge to which he had pled guilty and imposed twenty years in accord with the jury's recommendation, the sentences to run consecutively.  (Id. at 31–33.)[1]

Brown noted his appeal to the Court of Appeals of Virginia, raising two issues: (1) the Circuit Court's denial of the motion to consolidate the duplicate indictments, thereby violating his right against double jeopardy, and (2) the Court's failure to grant a new trial on both heroin charges, based on the government's Brady violation.  The Court of Appeals held that Brown had waived his double jeopardy objection by pleading guilty to one of the charges.  As for the Brady violation, the Court agreed with the trial court that Brown had suffered no prejudice from the violation; counsel had effectively impeached the informant, showing that she had pending drug charges, used heroin, and worked as an informant to help her children get out of trouble.  The

---

[1] The Circuit Court record reveals that the remaining charges against Brown, scheduled for July 23, 2015, were nolle prossed by the Commonwealth.

Court further held that ample other evidence supported the convictions.  Brown's appeal was denied on May 24, 2016.  (R. at 54–56.)[2]

Brown appealed to the Supreme Court of Virginia.  By order entered May 22, 2017, the Court refused the <u>Brady</u> issue and dismissed the double jeopardy/duplicative indictments issue for failure to comply with Rule 5:17(c)(1)(iii) of the Rules of the Supreme Court of Virginia.  (R. at 59.)  Brown sought a delayed appeal under Virginia Code § 19.2-321.2, alleging ineffective assistance of counsel in failing to comply with the Rules of Court.  The Court granted leave to file a delayed appeal, limited to the double jeopardy/duplicative indictments issue, by order entered November 8, 2017.  (<u>Id.</u> at 63.)  On August 15, 2018, the Court again dismissed the appeal for failure to comply with Rule 5:17(c)(1)(iii), and Brown's petition for rehearing was denied on October 5, 2018.  (<u>Id.</u> at 67–68.)  Brown did not appeal to the United States Supreme Court.

On February 11, 2019, Brown mailed his state <u>habeas</u> petition to the Rockingham County Circuit Court, raising four claims of ineffective assistance of counsel: (1) ineffective handling of the motion to set aside the jury verdict and guilty plea based on <u>Brady</u>, (2) misadvising Brown that he had no viable entrapment defense, (3) failing to present evidence that the informant perjured herself by testifying that she was working with police to get favorable treatment for her daughter when she started working for police on or before July 3, 2014, while her daughter's charges did not arise until July 11, 2014, and (4) misadvising Brown that he could still appeal the duplicative indictment/double jeopardy issue even if he pled guilty.  (Final Order at 3–4, Pet. Ex. 4 at 56–57, ECF 1.)  In its final order of May 17, 2019, the Circuit Court found the first three <u>habeas</u> claims were time-barred, because the May 22, 2017, order of the Supreme Court of Virginia was the final

---

[2] Where possible, citations herein are made to the paginated record of the Court of Appeals of Virginia, hereafter "R."  The court has reviewed the records and transcripts from all state courts, but the only record with page numbers is from the Court of Appeals.

order of the case, except for the limited exception granted for the delayed appeal of a single issue, the double jeopardy/duplicative indictment claim.  Further, the Court also found that all four of Brown's ineffective assistance of counsel claims failed on the merits under Strickland v. Washington, 466 U.S. 668 (1984).  (Final Order at 5, Pet. Ex. 4 at 58.)  Brown did not appeal this decision to the Supreme Court of Virginia.  On August 5, 2019, Brown filed his federal habeas petition, and the respondent moved to dismiss it.  On January 3, 2020, Brown moved to supplement his petition; by order entered January 10, 2020, the court granted leave for filing the supplement attached to Brown's motion.  The respondent then filed a supplemental motion to dismiss.  Brown has responded to both motions, making the matter ripe for disposition.

### B.  Facts of the Case

In the light most favorable to the Commonwealth, the party prevailing at trial, the evidence at trial established the following:

> At trial, Jeannie Barton [the informant] testified she worked with the police to make an undercover purchase of heroin from [Brown] on July 11, 2014.  The transaction was recorded on a device hidden in Barton's car, and the recording was played for the jury at trial.  The police kept Barton under surveillance as she drove from the location where she and her vehicle were searched, to the place where the transaction occurred, and to the site where Barton relinquished the heroin she had purchased from [Brown].  The police arrested [Brown] shortly after the transaction.  There was heroin and cocaine in [Brown's] possession.
>
> Barton testified she was cooperating with the police with the hope of gaining favorable treatment for her two children, who were facing drug charges.  Barton admitted that, at the time of trial, she had drug distribution charges pending against her based upon conduct that occurred in September 2014.  She also revealed that she was addicted to heroin.  [Brown] testified that he was a drug addict and that he sold heroin to Barton.

Brown v. Commonwealth, No. 1762-15-3, slip op. at 2 (Va. Ct. App. May 24, 2016).  At the time of his arrest, Brown had on his person twenty individual baggies of heroin (12 grams total), three

baggies of cocaine (9.6 grams total), and some capsules Brown later identified as ecstasy; these baggies and items were all together in a larger baggie, concealed in the front of Brown's waistband. Brown testified that both the heroin and cocaine were for his personal use.  Investigator Watson, an officer with thirteen years of experience in law enforcement, qualified as an expert on drug trafficking.  Watson opined that the drugs, as found on Brown at the time of his arrest, were inconsistent with personal use, based upon the quantity, the packaging, and where they were concealed.  According to Watson, a heroin user normally consumes two to four doses per day, a dose being .02–.03 grams.  A heavy user could use eight to ten such doses per day.  The larger baggies of heroin on Brown could easily be broken into twenty single-dose packets for individual purchase, packaged in the smaller purple baggies also found on Brown's person.  (Trial Tr. at 144, 164–68.)

C.  Petitioner's Claims

Brown alleges the following claims for relief in his § 2254 petition and supplement:

1.  Trial counsel was ineffective in presenting the motion to set aside the jury verdict and guilty plea due to the Brady violation;

2.  Trial counsel was ineffective in advising Brown that entrapment did not apply to his case;

3.  Trial counsel was ineffective in failing to present available evidence that the Deputy Commonwealth's Attorney knowingly presented false, perjured, and misleading evidence, namely that Barton cooperated with law enforcement to gain favorable treatment for her daughter on charges originating on July 11, 2014, where available evidence showed that Ms. Barton started working for the police on or before July 3, not July 11, 2014;

4. Trial counsel was ineffective in advising Brown that he could still appeal the duplicative indictment/double jeopardy issue if he pled guilty;

5. Brown's procedural default is excused in this case because Virginia's direct appeal scheme violates the United States Constitution;[3]

6. Trial and appellate counsel were ineffective in failing to challenge fatally flawed indictments on due process grounds; and

7. Trial and appellate counsel were ineffective in failing to properly challenge Brown's conviction on the basis of double jeopardy.

## II.  Discussion

### A.  Procedural Requirements

As amended by the Antiterrorism and Effective Death Penalty Act (AEDPA), federal statutes require state prisoners to meet several procedural requirements before a federal court may grant relief in habeas corpus. First, the petitioner must timely file his claim, generally within one year from the date on which the state court judgment became final. 28 U.S.C. 2244(d)(1)(A). Next, he must exhaust his state court remedies before filing in federal court. 28 U.S.C. § 2254(b)(1)(A).

### 1. Timeliness

As applicable to this case, 28 U.S.C. § 2244(d)(1)(A) requires a petition for habeas corpus to be filed within one year from "the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review." Id. The statute further provides that:

---

[3] This allegation is not a proper claim for relief in itself, but is a misstatement of a defense to the respondent's allegations that Brown's other claims are procedurally defaulted. Thus, the court addresses the procedural default issues fully in section II(A)(2) below, but will not address claim 5 as a separate claim for relief.

> The time during which a properly filed application for State post-
> conviction or other collateral review with respect to the pertinent
> judgment or claim is pending shall not be counted toward any period
> of limitation under this subsection.

28 U.S.C. § 2244(d)(2).  Brown filed his petition in this court on August 5, 2019.

The respondent argues that Brown's petition is untimely, except for the issue of duplicative indictments/double jeopardy, for which he was granted a delayed appeal.  For all other issues, the respondent argues that the statute of limitations began running on August 20, 2017, the last date on which Brown could have filed a petition for certiorari in the United States Supreme Court from the May 22, 2017, order of the Supreme Court of Virginia, refusing Brown's appeal on one issue and dismissing the other issue on procedural grounds.  The respondent's argument, however, contradicts the United States Supreme Court's interpretation of the statute.

> [W]here a state court grants a criminal defendant the right to file an
> out-of-time direct appeal during state collateral review, but before
> the defendant has first sought federal habeas relief, his judgment is
> not yet "final" for purposes of § 2244(d)(1).

Jimenez v. Quarterman, 555 U.S. 113, 121 (2009).

Admittedly, in Jimenez the entire appeal was filed out of time, whereas the Supreme Court of Virginia refused Brown's appeal on one issue and later granted a delayed appeal limited to another issue.  Under the language of the statute, however, this difference does not affect the timeliness analysis.  The statute begins to run from "the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review."  28 U.S.C. § 2244(d)(1)(A) (emphasis added).  Once the Court allowed the matter to be re-opened for consideration of an issue on direct review, "petitioner's conviction was no longer final for purposes of § 2244(d)(1)(A).  Rather, the order granting an out-of-time appeal restored the pendency of the

8

direct appeal."[4]  Jimenez, 555 U.S. at 120.  So long as a direct appeal was pending, whether for a single legal issue or for many, then the judgment could not be "final" under the statutory definition, because the judgment could be vacated or reversed.  To hold otherwise would require a petitioner either to file multiple habeas petitions, one to preserve issues decided earlier and another for claims addressed by the state court substantially later (which would be prohibited as a second or successive petition); or to include all issues in one federal petition that might have to be filed before the state has finished deciding the later issues (making those issues unexhausted).  These options effectively would leave a petitioner without a federal habeas remedy.  The holding in Jimenez, however, balances the petitioner's right to federal review with the AEDPA goals of promoting comity and federalism by giving the state court the first opportunity to review all claims raised by a petitioner and to correct any constitutional violation.

Based on this analysis, the statute of limitations for Brown began to run on January 3, 2019, the last date on which he could have sought certiorari review in the United States Supreme Court from the Supreme Court of Virginia's final order of October 5, 2018, denying rehearing on the dismissal of Brown's delayed state appeal.  Caspari v. Bohlen, 510 U.S. 383, 390–91 (1994) (noting that a state judgment becomes final when the availability of direct appeal to the state courts has been exhausted and the time for filing a petition for a writ of certiorari has elapsed or a timely filed petition has been denied; the time for filing a petition for a writ of certiorari is 90 days after the final order of the state's highest court).  Brown's federal petition was filed well within one year of that date, on August 5, 2019.  Even his supplemental petition was timely filed on January 3, 2020, exactly one year from when the statute of limitations began running.  Accordingly, the court

---

[4] The court has omitted internal quotation marks, alterations, and/or citations here and elsewhere in this memorandum opinion, unless otherwise noted.

need not address whether the limitation period was tolled by the state <u>habeas</u> proceedings.[5] Brown's petition and supplement are timely.

    2.  <u>Exhaustion and Procedural Default</u>

To exhaust his claims, a petitioner must present his federal constitutional claims to the highest state court before he may obtain federal <u>habeas</u> relief. <u>O'Sullivan v. Boerckel</u>, 526 U.S. 838, 842 (1999). So long as the claim is fairly and properly presented to the highest state court, either on direct appeal or in state collateral proceedings, then the claim is exhausted. <u>Baker v. Corcoran</u>, 220 F.3d 276, 288 (4th Cir. 2000). Failure to exhaust "deprive[s] the state courts of an opportunity to address those claims in the first instance." <u>Coleman v. Thompson</u>, 501 U.S. 722, 732 (1991). When a petitioner has no more state remedies available, his claim has been exhausted. When the state court rules that petitioner has procedurally defaulted his claims, those claims are simultaneously exhausted and defaulted. <u>Id.</u> Likewise, if a petitioner has not sought review in the highest state court and cannot now do so because of time limits or other procedural bars, the claim is simultaneously exhausted and defaulted. <u>Id.</u>

Because Brown did not appeal his state <u>habeas</u> case to the Supreme Court of Virginia, none of his ineffective assistance of counsel claims has been presented to the state's highest court. Brown can no longer present those claims to the state's highest court, as the time for appeal has passed, and he cannot file a second state <u>habeas</u> petition under state law. Va. Code § 8.01-654(B)(2). There is no other state remedy available for presenting these claims to the state's highest court. Accordingly, they are simultaneously exhausted and defaulted.

---

[5] The respondent argues that the state petition could not toll the federal statute of limitations, first because the federal statute of limitations had already expired by the time the state <u>habeas</u> was filed on February 11, 2019, an argument the court has just rejected, or second, because the state <u>habeas</u> court ruled that three out of Brown's four issues were time barred under state law, and an untimely state petition is not properly filed. <u>Artuz v. Bennett</u>, 531 U.S. 4, 11 (2000). Because part of Brown's petition was timely under state law, however, this court would consider the petition properly filed if it were necessary to address the tolling issue.

"If a state court clearly and expressly bases its dismissal of a habeas petitioner's claim on a state procedural rule, and that procedural rule provides an independent and adequate ground for the dismissal, the habeas petitioner has procedurally defaulted his federal habeas claim." Breard v. Pruett, 134 F.3d 615, 619 (4th Cir. 1998). For such defaulted claims, a petitioner must normally show both cause for the default and actual prejudice as a result of the claimed federal violation before a federal court can consider the merits of the claim. Coleman, 501 U.S. at 750. Brown has unartfully asserted a corollary of this rule: When a petitioner seeks federal relief for a defaulted claim of ineffective assistance of counsel at his trial, the Supreme Court applies a special test for "cause and prejudice." Martinez v. Ryan, 566 U.S. 1, 13–15 (2012). The Court will review defaulted claims for ineffective assistance of counsel if the following criteria are met: (1) the claim of ineffective assistance of trial counsel must be a "substantial claim;" (2) the "cause" is the lack of counsel or ineffectiveness of counsel in state habeas proceedings, based on the standards of Strickland v. Washington, 466 U.S. 668 (1984); (3) the state post-conviction proceeding was the first time ineffective assistance of counsel was raised; and (4) the state post-conviction proceeding was the first one in which the petitioner was actually or effectively allowed by state law to raise the claim. Martinez, 566 U.S. at 13–15; Trevino v. Thaler, 569 U.S. 413, 423 (2013).

Brown filed his Circuit Court habeas petition pro se. Under Virginia law, ineffective assistance of counsel claims are not considered on direct appeal. Lenz v. Commonwealth, 544 S.E. 2d 299, 304 (Va. 2001). Thus, Brown has satisfied the second, third, and fourth criteria of the Martinez test for each of his ineffective assistance claims. The remaining factor is whether each claim constitutes a "substantial claim." A substantial claim is simply one that has some merit. Martinez, 566 U.S. at 14. For any claim that meets this test, this court can consider the merits of that claim, including taking evidence if necessary. However, finding that a constitutional claim

has some merit is not the same as deciding that Brown is entitled to relief under§ 2254 on that claim.  Id. at 17.

B.   Analysis of Claims

The court examines each ineffective assistance of counsel claim using the deferential requirements set forth in Strickland: A petitioner must show that (1) counsel's performance was so deficient that he was not functioning as counsel guaranteed by the Sixth Amendment, meaning that counsel's performance fell below "an objective standard of reasonableness . . . under prevailing professional norms," and (2) that the deficient performance prejudiced the defense, meaning "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceedings would have been different."  Strickland, 466 U.S. at 687–88, 694.  A petitioner must meet both prongs of the test; neither deficiency alone nor prejudice alone will suffice.  Id. at 697.

1.   Claim 1: Ineffective assistance of trial counsel in presenting the motion to set aside the jury verdict and guilty plea because of the Brady violation

As discussed in the procedural background, the government failed to disclose before Brown's trial that Barton was pending indictment in Shenandoah County for distribution of methamphetamine on July 9 and July 12, 2014.  Counsel argued that this evidence, had it been timely disclosed, would have been used to impeach Barton's testimony that she was working with police to help her children, because she obviously needed to help herself, too.  Brown also alleges that Barton was working with law enforcement in Shenandoah County on July 3, 2014, to avoid an arrest for charges on that date, and that Barton purchased heroin from Brown on July 3, 2014, for which Brown had also been arrested.  Brown alleges that he told his attorney about the July 3 transaction before his trial date and that counsel failed to investigate the facts surrounding that

12

transaction, which could have further impeached Barton's testimony.[6]  He further alleged that Barton testified falsely at trial that she had no charges against her before July 11, 2014.

The deficient performance that Brown alleges regarding counsel's argument on the motion is that (1) counsel was "equivocal and indecisive" because counsel called Barton's testimony about working undercover to help her children a "half-truth" rather than calling it a falsehood; (2) counsel stated that the government's Brady violation was unintentional; (3) counsel failed to bring the trial transcript to Court for the motion hearing and was generally unprepared and unfamiliar with the facts when he argued the motion; and (4) counsel failed to apprise the Court of Barton's involvement with law enforcement before July 11, 2014, and her alleged perjury about charges before that date.[7]

Under Strickland, a reviewing court must strongly presume that counsel rendered adequate performance and made all significant decisions in the exercise of reasonable judgment.  Strickland, 466 U.S. at 690.  The reviewing court must not rely upon "the distorting effects of hindsight," but must presume that counsel's decisions and actions fell within the wide range of reasonable strategy decisions.  Id. at 689–90.  Giving trial counsel the benefit of this presumption, trial counsel's decisions to acknowledge to the Court that the Commonwealth's Attorney did not intentionally fail to turn over exculpatory information, and to refer to Barton's testimony as a half-truth, did not constitute deficient performance.  Indeed, good advocates know that "conceding points that are not fatal to your ultimate position" can enhance the credibility of the overall argument.  Kenneth

---

[6] There can be no Brady claim related to Barton's prior undercover purchase from Brown in Shenandoah County, as Brady is not violated if the information allegedly withheld by the prosecutor was reasonably available to the defendant.  Hoke v. Netherland, 92 F.3d 1350, 1355 (4th Cir. 1996).  Not only was Brown obviously aware of Barton's undercover purchase from him on July 3, as he was arrested and charged for the distribution on that date, but he also states that he shared this information with his attorney.

[7] Brown also argues that counsel misadvised him to plead guilty because Barton was a credible witness that the jury seemed to believe; however, that allegation has no bearing on counsel's performance in presenting the motion to set aside the jury verdict and allow withdrawal of the guilty plea.

J. Melilli, Personal Credibility and Trial Advocacy, 40 Am. J. Trial Advoc. 227, 231 (2016). Furthermore, failure to disclose material exculpatory evidence to the defense violates due process whether the government's actions are intentional or not. Brady, 373 U.S. at 87. Thus, acknowledging that the prosecutor did not act intentionally could not undermine or weaken counsel's argument. Likewise, counsel would have been ill-advised to insist that Barton lied about trying to help her children, unless counsel had solid proof to refute her testimony on that point; the strongest position counsel had, under the facts available, was that Barton's testimony contained a lie of omission: She failed to disclose that she was trying to improve her own legal situation as well as to help her children.

Counsel also had no factual foundation to argue that Barton committed perjury by testifying that she had received no drug charges before July 11, 2014. Although Barton may have been detected distributing drugs on July 9 and even on July 3, 2014, there is no evidence that she was charged for those crimes before July 11, 2014. Review of Virginia's online case information system reveals no charges against Barton before she was direct indicted by the grand jury in January 2015 for offense conduct that occurred in September 2014 and was later direct indicted in July 2015 for offenses that occurred on July 9 and July 12, 2014. Barton admitted in her testimony that she was a heroin addict with a two-gram per day habit and that she had been distributing drugs even after she stopped using heroin. (Trial Tr., June 26, 2015, at 128, 132–33.) Counsel did not perform deficiently by failing to accuse her of perjury when there is no evidence that she was ever charged before July 11, 2014.

Assuming without deciding that counsel was deficient in preparing for the motion hearing and failing to bring the trial transcript to Court, Brown cannot meet the prejudice prong under Strickland on this claim. Meeting the prejudice prong requires showing a reasonable probability

that the hearing would have had a different outcome but for counsel's deficient performance.  That showing is also required to determine whether suppressed evidence is material under Brady.  Failure to disclose exculpatory evidence violates due process only if the evidence is material.  Brady, 373 U.S. at 432.  Evidence is material "only if there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different.  United States v. Bagley, 473 U.S. 667, 682 (1985).  Impeachment evidence falls within the Brady rule, and must be disclosed if exculpatory and material.  Bagley, 473 U.S. at 669.  However, impeachment evidence "may not be material if the State's other evidence is strong enough to sustain confidence in the verdict."  Smith v. Cain, 565 U.S. 73, 76 (2012); United States v. Agurs, 427 U.S. 97, 112–13 & n.21 (1976).  When the State's other evidence is strong and the withheld impeachment evidence is cumulative of other impeachment information already used at trial, the effect of the withheld evidence is not sufficient to undermine confidence in the jury's verdict; thus, the evidence is not material, and a defendant's due process rights have not been denied.  Turner v. United States, __U.S.__, 137 S. Ct. 1885, 1895 (2017).  That is the situation here.

The withheld impeachment evidence—that Barton was about to be indicted for drug distribution on July 9 and July 12, 2014—was cumulative.  Barton had already been impeached by evidence that she had pending charges for drug distribution in September 2014; she had acknowledged a motive of trying to secure lenient treatment for her children who were facing criminal charges; she acknowledged that she was a heroin addict; and she admitted distributing illegal drugs herself on other occasions.  That she had two more pending distribution charges in addition to the ones she testified about would not likely have damaged her credibility more than the other impeachment information presented had already done.  Further, the inference that she was trying to curry favor for herself does not show any more bias than trying to secure lenience

15

for her children.  Indeed, some would say that a mother might be more inclined to lie to protect her children than herself.  For these reasons, the court finds no reasonable probability that the wrongfully withheld, but cumulative impeachment evidence of Barton's pending indictment would have changed the outcome of the trial, especially given the strength of the State's other evidence against Brown, even without Barton's testimony.

The evidence against Brown on the distribution charge was overwhelming.  Undercover officers visually monitored the controlled buy.  They made and presented to the jury an audio recording of the transaction.  Most importantly, Brown testified that he sold heroin to Barton on July 11, 2014.  (Trial Tr. at 205, 212.)  Although he claimed that the heroin he possessed after the sale was for his personal use, Investigator Watson, a law enforcement officer with 13 years of experience investigating drug trafficking, testified that the heroin did not appear consistent with personal use, based on quantity, packaging, and the location where Brown kept it on his person.  Because Brown admitted the distribution to Barton, nothing undermines confidence in his conviction for that offense, whether by guilty plea or otherwise.  Because Barton's testimony had nothing to do with Brown's intent regarding the heroin found on his person at the time of his arrest, the cumulative evidence to impeach Barton has no logical effect on the outcome of the jury's verdict on the possession with intent to distribute charge.  Because the wrongfully withheld evidence was thus not material, there was no due process violation, and withholding the evidence did not justify setting aside the verdict or allowing Brown to withdraw his guilty plea.[8]

---

[8] Brown's focus on <u>Hill v. Lockhart</u>, 474 U.S. 52 (1985) is misplaced.  That case involved a defendant who pled guilty because of erroneous advice of counsel.  While the case could be argued in support of one of Brown's other issues, this claim alleges ineffective presentation of a motion to withdraw his plea because of after-discovered <u>Brady</u> evidence.  Therefore, <u>Brady</u> and its progeny, not <u>Hill</u>, supplies the appropriate analysis.

16

Because Brown's motion to set aside his conviction and his guilty plea due to the <u>Brady</u> violation was not adequately supported by the facts or the law, Brown could not be prejudiced by any alleged deficiency in counsel's preparation for the motion.  Therefore, the court concludes that this claim is not substantial, and the court will grant the respondent's motions to dismiss as to claim 1.

      2.  <u>Claim 2: Ineffective assistance of trial counsel in advising Brown that the entrapment defense did not apply to his case</u>

This claim must fail because Brown can prove neither deficient performance nor prejudice. Entrapment clearly did not apply to Brown's case, and Brown would not have been entitled even to a jury instruction on this defense.

As Brown correctly writes in his petition, "Entrapment is the conception and planning of an offense by an officer, and his procurement of its commission by one who would not have perpetrated it except for the trickery, persuasion, or fraud of the officer."  <u>McCoy v. Commonwealth</u>, 385 S.E.2d 628, 630 (Va. Ct. App. 1989).  However, Brown fails to include the rest of the description:  Entrapment occurs when the "criminal conduct was the product of creative activity [by the police] that implants in the mind of an <u>otherwise innocent</u> person the disposition to commit an offense and induce its commission in order to prosecute."  <u>Id.</u> (emphasis added). Brown's criminal record reflects that he had distributed drugs many times over the years and had been convicted of drug distribution more than twice before.  He admitted that he had given heroin to Barton on previous occasions.  Giving the drug to another is still a form of distribution and carries the same penalty.  Brown's individual criminal history and his history of prior dealings with Barton establish his propensity to commit the crime.  When one is already predisposed to commit a criminal act, police use of an informant cannot be said to provide "an innocent person with the intent to commit a crime."  <u>Id.</u> at 631.

The defense of entrapment is based on a rule of fairness which bars a conviction resulting from improper police conduct.  There is nothing improper in the use of informers to provide opportunities for a willing person to commit a crime.  Schneider v. Commonwealth, 337 S.E.2d 735, 736 (Va. 1985).  In Neighbors v. Commonwealth, 197 S.E.2d 207, 208–09 (Va. 1973), the Supreme Court of Virginia held that the defendant was not entitled even to a jury instruction on entrapment, because the evidence was insufficient, as a matter of law, to show entrapment.  In that case, the informant begged the defendant for drugs on more than one occasion.  The defendant had sold to the informant in the past.  This time, the defendant advised the informant that he was trying to get out of the drug life and that he had nothing for the informant.  Eventually, the defendant agreed to see what he could find for the informant, found him two morphine pills, and sold them to the informant.  Id.  The Court held, "When the evidence is viewed in the light most favorable to the theory of entrapment, it is clear that all the police and Patterson did was to afford an opportunity for the commission of the offense, an opportunity the defendant willingly accepted.  Therefore, the evidence was insufficient, as a matter of law, to create a jury issue on entrapment."  Id.  Neighbors remains the law in Virginia and was relied upon by the Court in McCoy, the case which Brown cited.

Brown's facts provide even less support for entrapment than the facts in Neighbors.  Thus, counsel committed no legal error in advising Brown that entrapment did not apply to his case.  Because counsel's advice was sound, Brown was not prejudiced by relying upon that advice.  Because Brown cannot show either deficient performance or prejudice on this claim, the court concludes that it is not a substantial claim.  The court will grant the respondent's motions to dismiss as to Claim 2.

3. Claim 3:  Ineffective assistance of counsel in failing to introduce evidence that the Commonwealth's Attorney knowingly presented false, perjured, and misleading testimony from Barton

Brown fails to prove either deficient performance or prejudice on this claim.  As discussed in Claim 1, Brown has not established that Barton committed perjury.  From court files in Shenandoah County, it is clear that Barton was never formally charged with a drug offense before her undercover purchase from Brown on July 11.  Further, Barton's children were facing charges for which she hoped she could obtain leniency.  At most, her testimony can be construed as a half-truth because of information she omitted, such as hoping to get a favorable sentence for herself as well as for her children.

Equally absent is any proof that the Rockingham County Commonwealth's Attorney's Office knew what Barton's motives were in working with different law enforcement officers in Shenandoah and Rockingham Counties.  Brown concedes in his argument, "The prosecutor's lack of actual knowledge that testimony is false does not automatically excuse his failure to disclose the truth." (Pet. 39, ECF No. 1.)  In a claim for failure to disclose exculpatory evidence under Brady, lack of actual knowledge is indeed irrelevant, but this claim is for knowingly presenting false, perjured testimony.  Napue v. Illinois, 360 U.S. 264, 269 (1959).  Brown has failed to show that Barton's testimony was perjured and has not stated facts, as opposed to conclusions, showing that the prosecutor actually knew of any perjury.  Therefore, Brown has failed to establish that counsel was deficient in failing to present a false testimony argument.

Even if Barton's testimony was misleading because it was incomplete, as discussed in Claim 1, Brown suffered no prejudice from the omissions.  During trial, counsel established that Barton was a heroin addict, that she had pending drug charges of her own, that she was motivated by a desire to secure better sentences for her children, and that she had distributed heroin herself,

19

even after she stopped using the drug.  Particularly in light of Brown's admission that he sold

heroin to Barton on July 11, 2014, and that he had given her heroin on previous occasions, Barton's

failure to testify about additional pending drug charges against her, and her failure to volunteer

that she also hoped for a lenient sentence for herself, had no bearing on the outcome of the trial.

Because Brown cannot demonstrate deficient performance or prejudice, this is not a substantial

claim, and the court will grant respondent's motions to dismiss as to claim 3.

4.  <u>Claim 4:  Ineffective assistance of counsel in advising Brown that he could appeal the
double jeopardy/duplicative indictment issue even if he pled guilty to one of the
indictments</u>

This contention is the only claim that the state <u>habeas</u> court did not consider untimely, but

Brown nonetheless procedurally defaulted this claim by failing to appeal it to the Supreme Court

of Virginia.  Nevertheless, because the claim alleges ineffective assistance of counsel and

otherwise falls within the parameters of <u>Martinez</u>, 566 U.S. at 14, as previously discussed, this

court can consider the issue if it presents a substantial claim.

The Circuit Court held that Brown failed to show deficient performance by counsel in

recommending a guilty plea and failed to show prejudice.  The court agrees that Brown cannot

demonstrate deficient performance in the advice to plead guilty; therefore, it is unnecessary to

consider the prejudice prong.  <u>Strickland</u>, 466 U.S. at 697.

The Circuit Court based its finding that counsel performed adequately on the overall

recommendation to plead guilty, without mentioning the advice regarding the right to appeal the

double jeopardy determination.  The Court's factual and legal determinations are reasonable.  This

court also notes that counsel did not mis-advise Brown on the right to appeal.  In 1975, the United

States Supreme Court specifically held that a double jeopardy claim is not waived solely by a

guilty plea.  <u>Menna v. New York</u>, 423 U.S. 61, 62 (1975).  Although several constitutional claims

are automatically relinquished by a guilty plea, the Court continues to recognize the holding in Menna, that "a plea of guilty to a charge does not waive a claim that—judged on its face—the charge is one which the State may not constitutionally prosecute."   Class v. United States, __U.S.__, 138 S. Ct. 798, 803–804 (2018).  A plea of double jeopardy is a claim that the state may not validly convict the defendant, no matter how clearly his factual guilt is established.  Id. at 804.

There are circumstances under which a double jeopardy claim might be waived.  For example, a written plea agreement could have terms explicitly waiving the right to raise the issue on appeal, and if the plea and waiver are voluntary, knowing, and intelligent, then such waiver would be binding.  Id. at 802.  When a defendant pleaded guilty to two indictments that on their faces described two separate conspiracies, his act of pleading guilty admitted the facts alleged in both indictments.  Because the defendant could not prove from the indictments and existing record that the two charges were, in fact, the same, his double jeopardy claim did not survive the guilty plea.  Id. at 804 (discussing United States v. Broce, 488 U.S. 563 (1989)).

The Court of Appeals of Virginia in a recent unpublished opinion discussed the survivability of double jeopardy claims after a guilty plea, in light of the Supreme Court's decisions in Menna and Broce, recognizing that a double jeopardy claim survives a guilty plea.  Saunders v. Commonwealth, No. 1828-16-1, 2017 WL 4890812, at *3 (Va. Ct. App. Oct. 31, 2017).  The Court in Saunders further noted that Rule 5A:18 bars a litigant from raising a claim in the Court of Appeals if the argument was not made first to the Circuit Court.  Id. at *2.  Brown's counsel made the argument before the trial court, so Rule 5A:18 was not a bar to Brown's raising the double jeopardy issue on appeal.

Because Brown's counsel properly advised him on the law, there was no deficient performance.  Therefore, this claim is not substantial, and the court will grant the motions to dismiss as to claim 4.

     5.  Claim 6:  Ineffective assistance of trial and appellate counsel in failing to challenge fatally flawed indictments on due process grounds

     a.  Trial counsel

If the indictments against Brown were sufficient, then his trial counsel performed adequately, and Brown suffered no prejudice from the failure to challenge the indictments on due process grounds.  The Virginia Code sets forth the requirements for indictments under state law:

> The indictment or information shall be a plain, concise and definite written statement, (1) naming the accused, (2) describing the offense charged, (3) identifying the county, city or town in which the accused committed the offense, and (4) reciting that the accused committed the offense on or about a certain date.  In describing the offense, the indictment or information may use the name given to the offense by the common law, or the indictment or information may state so much of the common law or statutory definition of the offense as is sufficient to advise what offense is charged.

Va. Code § 19.2-220.  The indictment should also cite the statute that defines the offense, or if none, the statute that prescribes the punishment for the offense.  Va. S. Ct. Rule 3A:6(a).

The purpose of an indictment is to give the accused "notice of the nature and character of the accusations against him" so that he can adequately prepare his defense.  Sims v. Commonwealth, 507 S.E.2d 648, 652 (Va. Ct. App. 1998).  Ordinarily, if the indictment tracks the language of the statute, then the indictment sufficiently charges the offense, so long as the statutory language in the indictment includes all material elements of the offense.  Id.

Both heroin indictments described the offenses charged against Brown by tracking the language of Virginia Code § 18.2-248,[9] alleging that Brown "did unlawfully and feloniously manufacture, sell, give, or distribute or possess with the intent to manufacture, sell, give or distribute a schedule I controlled substance, namely heroin."   The indictment named Brown, identified Rockingham County as the place of occurrence, and alleged that the offense occurred on or about July 11, 2014.   Finally, the indictment cited Code § 18.2-248.   Furthermore, a defendant may seek a bill of particulars to supplement the indictment, under Virginia Code § 19.2-230, if he feels that the indictment fails to clearly identify all material elements of the offense.

Where the accused has been given adequate notice of the nature and character of the accusation, then any other alleged error related to the indictment is harmless.   Sims, 507 S.E.2d at 653.   For example, the defendant in Sims was charged with burglary; the indictment, tracking the language of the statute, alleged that the defendant "did break and enter in the daytime, or enter in the nighttime."   Id.   The defendant's motion for bill of particulars was denied.   The appellate court held that the defendant was not prejudiced by the failure to grant the bill of particulars because the evidence introduced at the preliminary hearing indicated that the entry occurred during the daytime, so he had adequate knowledge of each element the prosecution intended to prove.   Id.   Further, on another indictment alleging abduction "by force, threat or intimidation," the appellate court held that the defendant was not entitled to a bill of particulars providing details about the nature of the force used, because the defendant was otherwise put on notice of the nature of the charge against him, and the government was not required to disclose the specific evidence that it would offer to prove the element.   Id. at 654–55.

---

[9] The statutory language in effect in July 2014 was "Except as authorized in the Drug Control Act (§ 54.1-3400 et seq.), it shall be unlawful for any person to manufacture, sell, give, distribute, or possess with intent to manufacture, sell, give or distribute a controlled substance or an imitation controlled substance."  Va. Code § 18.2-248(A).

The Court of Appeals of Virginia has noted that Code § 18.2-248 "charges a single offense that can be committed by several means." Rush v. Commonwealth, No. 2058-94-2, 1996 WL 130942, at *2 (Va. Ct. App. March 26, 1986). The defendant in Rush was charged with four counts of distributing cocaine in violation of § 18.2-248(a). Each indictment cited Code § 8.2-248 and alleged that the defendant "did unlawfully and feloniously sell, give or distribute cocaine, a Schedule II controlled substance." Id. at *1. The defendant objected to the indictments, claiming that each indictment was duplicitous, improperly charging him with more than one offense. The Rush Court disagreed, holding that "sell, give, or distribute" were different means of accomplishing the same offense. The Court further noted that even if the indictments were duplicitous, the proper remedy would be requiring the government to elect the charge on which it would proceed under each indictment. Id. at *2.

Brown's two indictments for heroin distribution offenses were charged under the same Code section as Rush's charges. There was no "fatal flaw" in the indictments; they alleged a violation of the statute, tracking the language of the statute. As in Sims, at least by the time of the motion hearing on March 2, 2015, Brown was fully aware that one indictment alleged the sale of heroin to Barton and the other alleged possession with intent to sell the heroin that was on his person at the time of his arrest. Based on the longstanding principles expressed in the above cases, Brown's trial counsel was not deficient for failing to raise a due process issue, nor did Brown suffer any prejudice from that omission. Accordingly, this claim alleging ineffective assistance of trial counsel is not substantial.

   b.   Appellate Counsel

The rule in Martinez, allowing a federal court to consider an otherwise procedurally barred, substantial claim for ineffective assistance of counsel if the default is caused by absence of counsel

or ineffective assistance of counsel in a state <u>habeas</u> proceeding, applies only to claims of ineffective assistance of trial counsel. The Supreme Court refused to extend this exception to allegations of ineffective assistance of appellate counsel. <u>Davila v. Davis</u>, __U.S.__, 137 S. Ct. 2058, 2064 (2017). Thus, defaulted claims of ineffective assistance by appellate counsel cannot be raised in federal <u>habeas</u> unless the petitioner shows both cause for the default and prejudice. <u>Coleman</u>, 501 U.S. at 750. Lack of counsel or ineffective assistance of counsel at state <u>habeas</u> proceedings does not constitute cause, because there is no constitutional right to counsel in state post-conviction proceedings, and thus, there can be no deficiency that amounts to deprivation of the constitutional right to counsel. <u>Id.</u> at 755.

Further, for the same reasons discussed in the evaluation of trial counsel's performance, Brown cannot demonstrate actual prejudice from the alleged constitutional error of appellate counsel. Because Brown has not demonstrated a substantial claim for ineffective assistance of trial counsel and has not demonstrated cause and prejudice to overcome the default of the claimed ineffective assistance of appellate counsel, the court will grant the motions to dismiss as to Claim 6.

6. <u>Claim 7: Ineffective assistance of trial and appellate counsel in failing to properly challenge his conviction on the basis of double jeopardy</u>

a. <u>Trial counsel</u>

Brown alleges that trial counsel failed to properly challenge his conviction on the basis of double jeopardy. However, trial counsel raised the double jeopardy issue in a pre-trial motion filed with the trial court on February 25, 2015. Among other cases, counsel cited <u>Lane v. Commonwealth</u>, 659 S.E.2d 553 (Va. Ct. App. 2008), the same case Brown discusses in his amended federal petition. Counsel ably argued <u>Lane</u> and its applicability to Brown's case at the motion hearing on March 2, 2015. (Hr'g Tr. at 6–8, March 2, 2015.) When the trial court overruled

the motion on March 13, 2015, Brown's exception to the ruling was noted. (Hr'g Tr. at 5, March 13, 2015.) Brown has failed to identify anything trial counsel should have done differently to "properly" raise the issue. Accordingly, he has shown no deficiency in counsel's performance.

Nor has Brown demonstrated any prejudice. The trial court found that the evidence supported the existence of two separate and distinct criminal violations. (Hr'g Tr. at 3–5, March 13, 2015.) These factual findings are supported by the record, and the law supports the legal conclusion that no double jeopardy violation occurred. The first offense, the one to which Brown pled guilty, was distribution (sale) of heroin to Barton. That transaction was complete when Barton paid Brown the money, took possession of the drugs from him, and departed. The second offense, possession with intent to distribute, required proof of different factual elements than the first offense and occurred after the sale to Barton was complete, because Brown continued to possess other drugs with the intent to distribute. The trial court found these circumstances different from those in Lane, where the defendant had some oxycodone in one pocket, more oxycodone in a different pocket, and a bottle of oxycodone in his house (directly behind him, as he was standing in his yard). Those circumstances did not justify three separate charges of possession with intent to distribute. Lane, 659 S.E.2d at 560–61.

Brown's situation is more comparable to that of the defendants in Peake v. Commonwealth, 614 S.E.2d 672 (Va. Ct. App. 2005) and in Shears v. Commonwealth, 477 S.E.2d 309 (Va. Ct. App. 1996). In Peake, the defendant had a small quantity of marijuana in his pocket and a marijuana pipe near him. Elsewhere in his home, he had a large red lockbox with a larger amount of marijuana divided into separate packages, digital scales, and sums of cash. Even though both quantities of marijuana were possessed at the same time and in close proximity to one another, the context supported finding that the defendant could be prosecuted both for simple possession of

26

marijuana, for the small amount in his pocket, and possession with intent to distribute marijuana for the bags in the lockbox, without violating double jeopardy. Peake, 614 S.E.2d at 676. In Shears, the defendant was arrested when he arrived at an informant's trailer to deliver cocaine. He was charged with possession with intent to distribute the bag of cocaine found on his person. After his arrest, officers obtained a search warrant for defendant's home, where more quantities of cocaine were found, and he was also charged for possession with intent to distribute that cocaine. In holding that his convictions for both charges did not violate double jeopardy, the appellate court noted that "each distinguishable incident of the offending conduct constitutes a 'unit of prosecution' for violation of the statute." Shears, 477 S.E.2d at 312. Brown's distribution to Barton was one distinguishable incident of violating the drug distribution statute; his possession of more heroin after the sale to Barton was over, in a quantity inconsistent with personal use, was a separate violation of the statute.

Because counsel argued that double jeopardy barred separate convictions on the two indictments, there was no deficient performance. Neither was Brown prejudiced; the Court decided the issue against him based on the Court's interpretation of the caselaw, not because of counsel's performance. Accordingly, this court concludes that this claim is not substantial.

b.  Appellate Counsel

As with the previous claim for ineffective assistance of appellate counsel, this defaulted claim cannot be raised in federal habeas unless the petitioner shows both cause for the default and actual prejudice. Coleman, 501 U.S. at 750. Lack of counsel during state habeas proceedings is not sufficient cause, and Brown has offered no other cause. Further, for the reasons just discussed, Brown was not prejudiced by appellate counsel's failure to properly raise the double jeopardy

issue. The court concludes that Brown has failed to overcome his procedural default on this claim. For the reasons stated, the court will grant the motions to dismiss as to claim 7.

### III. CONCLUSION

After careful review of the petition, the amended petition, the motions to dismiss, and pertinent parts of the state court records, transcripts, and decisions, the court concludes that the respondent's motions to dismiss must be granted. An appropriate order will issue this day.

**ENTER:** This 31st day of July, 2020.

_____
Senior United States District Judge

28